[Civ. No. 12120. First Dist., Div. One. June 1, 1943.]

HERBERT K. WALTON, Appellant, v. HELEN M. WALTON, Respondent.

J. W. Ehrlich, Roy A. Sharff and Alfred M. Miller for Appellant.

Freitas, Duffy & Keating and John J. Taaffe for Respondent.

KNIGHT, J.—The question here involved is whether under the facts disclosed by the record a husband, owning a joint tenancy interest with his wife in real property upon which she has declared a homestead for the benefit of herself, her husband and their minor child, may destroy the homestead rights of the wife by a forced sale of the property brought about through the medium of an action to partition the property. The trial court held in the negative, and the husband appeals.

The following are the facts: Subsequent to their marriage the parties acquired, as joint tenants, a parcel of land in Marin County on which they built a home. The dwelling was completed in December, 1937, and was immediately occupied by them and their minor son as the family home. A few months later the husband abandoned his family and took up his residence elsewhere. The wife and the minor son continued to occupy the premises as the family home; and on or about March 8, 1939, the wife filed suit in the city and county of San Francisco for permanent maintenance and support. On April 4, 1939, on stipulation, an order was made for the issuance of an injunction *pendente lite,* enjoining the husband from transferring, encumbering, or otherwise disposing of any real or personal property, including stocks, bonds and other securities in his possession or under his control; and on April 10, 1939, he filed the present action in Marin County for the partition of the home property. Since it was not susceptible of physical division, he asked that the premises be sold by a referee and the proceeds divided equally between himself and his wife. Two days later and on April 12, 1939, the wife declared a homestead on the property for the benefit of herself, her husband and their minor child. The suit for permanent maintenance and support was tried first; and on December 23, 1940, a decree was entered in favor of the wife wherein it was adjudged, among other things, that having established facts which would be sufficient to warrant the granting to her of a divorce upon the grounds of adultery

and extreme cruelty, she was entitled to live separate and apart from him; and she was awarded the custody of the minor son and the husband was directed to pay to her certain sums of money, including a monthly sum for the support of herself and the minor son. Some four months later the present action was tried. The answer set up the existence of the homestead, and the trial court held that it was not subject to forced sale by the husband in an action in partition. Accordingly judgment was entered that plaintiff take nothing by his action. The constitutional and statutory provisions creating and insuring homestead rights, and the decisions construing and applying those provisions sustain the trial court's decision.

Ever since the year 1868 it has been the declared law of this state that a wife may impress a homestead on premises held in joint tenancy by herself and her husband, as well as upon his separate property (Stats. 1867-8, p. 116; sec. 1238, Civ. Code; *Swan* v. *Walden,* 156 Cal. 195 [103 P. 931, 134 Am.St.Rep. 118, 20 Ann.Cas. 194]; *Watson* v. *Peyton,* 10 Cal. 2d 156 [73 P.2d 906]); and that once the wife impresses premises with a valid homestead, the husband is without power to destroy it except in the manner provided by statute (*Mills* v. *Stump,* 20 Cal.App. 84 [128 P. 349]), that is, by an instrument executed and acknowledged by the husband and the wife (secs. 1242 and 1243, Civ. Code), or by a decree of divorce (*Lang* v. *Lang,* 182 Cal. 765 [190 P. 181]). Furthermore, ever since the adoption of the codes, section 1240 of the Civil Code has declared that ''The homestead is exempt from execution or forced sale, except as in this title provided'' (referring to title 5, part 4, div. 2, Civ. Code). The foregoing statutory enactments have been adopted pursuant to mandates found in both the Constitution of 1849 (art. XI, sec. 15) and in the present Constitution (art. XVII, sec. 1) to the effect that ''The Legislature shall protect, by law, from forced sale, a certain portion of the homestead and other property of all heads of families.'' The exceptional cases referred to in said section 1240, wherein the homestead is subject to execution or forced sale, are enumerated in sections 1241 and 1245 of said code, and they all relate to judgment creditors. The former section reads: ''The homestead is subject to execution or forced sale in satisfaction of judgments obtained; 1. Before the declaration of homestead was

filed for record, and which constitute liens upon the premises. 2. On debts secured by mechanics, contractors, subcontractors, artisans, architects, builders, laborers of every class, material-men's or vendor's liens upon the premises. 3. On debts secured by mortgages on the premises, executed and acknowledged by husband and wife, or by an unmarried claimant. 4. On debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record." And the latter section, 1245, was enacted to cover the cases of judgment creditors not specified in section 1241. It provides in substance that "When an execution for the enforcement of a judgment obtained in a case not within the classes enumerated in section 1241 is levied upon the homestead, the judgment creditor may at any time within sixty days thereafter" invoke the benefits of the court procedure prescribed by the succeeding code sections, to have the premises appraised; and if it appears from the appraisal that the land exceeds in value the amount of the homestead exemption and the premises cannot be divided, the premises must be sold at forced sale, and the proceeds to the amount of the homestead exemption paid to the homestead claimant and the balance applied to the satisfaction of the execution. (Civ. Code, secs. 1246 to 1256.) The authorities construing and applying the said code sections are uniform in holding that except as provided therein a valid homestead exempts the premises covered thereby from execution or forced sale (*Jacobson* v. *Pope & Talbot*, 214 Cal. 758 [7 P.2d 1017]). Admittedly appellant's legal status can in no sense be classified as a judgment creditor; nor on account of the negative provisions of said sections 1242 and 1243 could he bring about the destruction of the homestead by way of alienation, abandonment, or encumbering the same, unless the instrument of conveyance, encumbrance or abandonment was executed and acknowledged by his wife. Therefore, as stated by the trial court in its memorandum opinion, the conclusion is inescapable that the husband may not, in view of the prohibitive language employed in the enactment of said section 1240, force a sale of the homestead premises by means of an action in partition.

 Appellant contends, however, that despite the constitutional and statutory provisions insuring protection against the forced sale of homesteaded premises, he is entitled, as the own-

er of a joint interest in the property, to invoke the provisions of section 752 of the Code of Civil Procedure, which provide for the partition of real property, and that therefore, since the premises herein are not capable of being divided and allotted in kind, he is entitled to force the sale thereof, and to receive a full one-half of the proceeds of the sale. In other words, he argues that his property rights as a joint tenant are paramount to homestead rights secured to his wife by the homestead laws. With this contention and argument we are unable to agree.

As stated in California Jurisprudence, it is a general rule that a homestead, whether probate or statutory, may not be made the subject of an action for partition. (20 Cal.Jur. 611.) The rule is founded largely upon the principle that there is a natural and moral obligation on the head of the family to provide for the support of his wife and children and other persons dependent upon him, which is, if not paramount, equal to his obligations to pay his debts (13 R.C.L. p. 545) and that land occupied as a homestead may be regarded as subject to a trust imposed by law which would necessarily be defeated by partition. (*Mills* v. *Stump, supra.*) The case last cited involved a probate homestead covering 25 acres which was set apart to the widow from a 320-acre tract, and the entire tract was subsequently distributed in undivided shares to the widow and other heirs as tenants in common. The widow brought suit to partition the 295 acres not included in the homestead, and the other heirs sought to include in the partition action the homesteaded 25 acres. The court held that this could not be done, that "Section 752 of the Code of Civil Procedure was not intended to authorize the partition of the homestead interest during its enjoyment," and that therefore the homesteaded 25 acres could not be brought into the partition action. In so holding the court went on to say: "The homestead interest in land is the offspring of statute, created for the humane and benevolent purpose of furnishing what its designation indicates— a home for the persons for whom the law awards it, and in its enjoyment it is by law made a sanctuary against execution creditors and should be against every other form of hostile attack. In the present case the homestead having been carved out of the husband's separate estate was decreed to

plaintiff for her sole use during her natural life. But plaintiff does not hold this interest as parcenary, joint tenant, or tenant in common. While it partakes of some of the attributes of a joint tenancy, it is not such an interest in strict legal sense nor in the sense the term is used in the statute. It is not by virtue of her homestead interest that plaintiff brings the action, but as a tenant in common of the land with defendants. Her homestead interest is of such character as of itself to be incapable of partition. 'The purpose of a homestead is to secure a home to each and all those clothed with a homestead right—to each and all of them; and the power of a stranger to enter into possession of the land, and, as a tenant in common to interfere with its occupancy and control by the homestead claimants and have it partitioned, or sold, if division be impracticable, would be inconsistent with the very nature of a homestead and violative of the very purpose for which a homestead is created.' (*Moore* v. *Hoffman*, 125 Cal. 90 [73 Am.St.Rep. 27, 57 P. 769].) The tenants in common of the land in question hold subject to the homestead right and have no right of possession and the court can give them no right of possession of the portion impressed with the homestead by virtue of their tenancy in common. It is held by plaintiff by title distinct from that held by her and her cotenants as tenants in common of the fee. 'It is the prevailing rule that the widow is entitled to a homestead as well against the heirs as against the creditors of her deceased husband, and that during the continuance of her right of occupancy there can be no partition of the homestead at the suit of the heirs, and this though there are no creditors.' (15 Am. & Eng. Ency. of Law, p. 699; 29 Am. & Eng. Ency. of Law, p. 1162.) 'Lands occupied as a homestead may well be regarded as subject to a trust imposed by law which would necessarily be defeated by partition. It must therefore be denied, although the title is vested in two or more persons, as long as they or any of them remain entitled to occupy the property as a homestead.' (30 Cyc. 187.) Mr. Freeman states the rule as follows: 'The homestead cannot be partitioned against the objection of the surviving wife, on the application of the other heirs, and after the decease of the husband. She has the right, at least as long as she resides on the premises with her family, or with any minor children of the family, to occupy and enjoy the whole homestead. The heirs cannot

curtail this right by compelling her to submit to a partition of the premises, and to confine her subsequent enjoyment to the portion assigned to her.' (Freeman on Cotenancy and Partition, sec. 60.)'' And further on the court said: ''The power to sell, given by the statute and under the general rule, cannot be invoked to solve the difficulties, for the homestead is of such a nature and was instituted for such a purpose as to forbid its compulsory sale. Once a homestead, always a homestead until it is destroyed ᴠin a way authorized by statute, or by its voluntary surrender by the person entitled to it, such person being competent so to do.''

A case involving a statutory homestead is *Swan* v. *Walden*, *supra*. There three contiguous lots (3, 4 and 5) were acquired by Walden and his wife, as joint tenants, and the wife declared a homestead on lots 3 and 4. Subsequently, the homestead never having been abandoned, the husband executed a deed of grant of all his interest in the three lots to Swan, who brought an action to partition all of the property covered by the deed. Judgment passed for Swan, Mrs. Walden appealed, and the judgment was reversed. It was held, among other things, that since the wife did not join in the execution of the Swan deed the homestead she had impressed on lots 3 and 4 could not be destroyed by an action for partition.

At the time that case was decided, said section 1238 contained no express provision, as it does now, that a wife may declare a homestead on property held in joint tenancy with her husband. It provided merely that ''If the claimant be married, the homestead may be selected from the community property, or the separate property of the husband, or, with the consent of the wife, from her separate property . . .;'' and in holding that under the wording of the statute as it then stood, a wife could impress a homestead on property held in joint tenancy by herself and husband, the court said: ''Here the wife seeks to impress the *whole* land with the homestead characteristic. This she may do as to her own interest, which is her separate property, and this she may do as to her husband's interest, since she has the power to declare a homestead upon the husband's separate property, though he has no such power over hers. The homestead thus attempted to be declared is upon land, all of which is susceptible at the instance of the wife of having the homestead characteristics

impressed upon it. There is no occasion for segregation or partition or delimitation of boundaries, since the homestead attaches to all of the estate and all of the land.'' (Italics ours.) In other words, the decision in that case rested upon the theory that the interest of each spouse was separate property and that since the wife had power to declare a homestead on her husband's separate property, and she was the owner of the remaining interest, the whole of the estate and all of the land was subservient to the homestead (*Watson* v. *Peyton, supra.*) It follows necessarily, therefore, that since a husband cannot in any manner, without his wife's consent, destroy a homestead declared by her on property of which he is sole owner, he cannot by an action in partition bring about the destruction of a homestead declared by her on property in which he owns a lesser estate, namely, only a joint tenancy interest. In the case of *Lang* v. *Lang, supra,* the homestead was declared on community property, and the court there fully recognized the existence of the general rule above mentioned that a homestead is not subject to an action for partition, but it was held that under the facts of that case the rule did not there apply for the reason that the family was severed by a decree of divorce and the qualities of the homestead estate were thereby destroyed.

The same general rule prevails in other jurisdictions (13 R.C.L. p. 686; Thompson on Real Property, vol. 1, p. 1011), among them being the State of Minnesota, wherein a case arose which is identical in all of its essential facts with the one here presented, except that there the action in partition was brought by the wife. (*Grace* v. *Grace*, 96 Minn. 294 [104 N.W. 969, 113 Am.St.Rep. 625, 6 Ann.Cas. 952, 4 L.R.A. N.S. 786].) At the time she declared the homestead, title to the property stood in the name of the husband and he afterwards conveyed to her an undivided one-half interest therein. Later, on account of his cruel treatment, she left her husband and abandoned the premises as her home, and several months afterwards brought an action for the partition of the homesteaded property. The same contentions were there made in behalf of the wife that are here urged in behalf of the husband. In stating them the court there said: ''The contention of the plaintiff [the wife] is that the wife's undivided half interest was held by her free from any present vested and completed right of her husband; that the husband's right in

an undivided part of the premises is not paramount, but is subordinate, to the legal title in the plaintiff, owning the other undivided interest; that the wife, having abandoned the premises for homestead purposes, may compel partition in the same manner as a stranger might; that the husband's homestead right is of necessity subject to the rights of the cotenant; and that, where a tenant in common has homestead rights, and partition in kind between him and a cotenant is impracticable, a sale of the whole may be had, but the homestead attaches to and protects the proceeds." The contentions were held to be without merit, and in so holding the court said: "The law and the reason of the law, however, deny the ability of a wife, by leaving her husband, to acquire the right to compel partition of her husband's homestead, in which she has an undivided half interest and which she occupied with him as a homestead. A homestead can be owned and occupied by husband and wife as tenants in common. *Lozo* v. *Sutherland,* 38 Mich. 168. There may be a homestead right in an undivided interest in premises. *Kaser* v. *Haas,* 27 Minn. 406, 7 N.W. 824; 25 Century Dig. sec. 121, cols. 2245, 2246. In this case, accordingly, defendant had at least a homestead interest in his undivided half of the premises (*Riggs* v. *Sterling,* 60 Mich. 643, 650, 27 N.W. 705, 1 Am.St.Rep. 554), although it may well be doubted whether the homestead rights of the husband are limited to that interest (*Ehrck* v. *Ehrck,* 106 Iowa 614, 76 N.W. 793, 68 Am.St.Rep. 330; *Re Emerson,* 58 Minn. 453, 60 N.W. 23). Neither the husband nor the wife can dispose of his or her right of that character without the express consent of the other. Gen Stat. 1894, secs. 5521, 5522, 5532; Laws 1905, Chap. 255, p. 390; *Weitzner* v. *Thingstad,* 55 Minn. 244, 56 N.W. 817. And see *Eaton* v. *Robbins,* 29 Minn. 327, 13 N.W. 143; *Sherrid* v. *Southwick,* 43 Mich. 515, 5 N.W. 1027; 25 Century Dig. sec. 191, col. 2330. . . . The husband and the history of the use of the premises in this case had determined the homestead of the family. *Moss* v. *Warner,* 10 Cal. 296. Admitting that all the homestead rights there existed were in the husband's undivided half, under neither statute could the wife make a valid sale or conveyance destroying the homestead. The law will not allow her to do indirectly through a suit for partition what she could not do directly by sale or conveyance. *Mitchell* v. *Mitchell,*

101 Ala. 183, 13 So. 147 (a case essentially similar to the one at bar); *Brooks* v. *Hotchkiss,* 4 Ill.App. 175; *Holbrook* v. *Wightman,* 31 Minn. 168, 17 N.W. 280; *Umland* v. *Holcombe,* 26 Minn. 286, 3 N.W. 341; *Hafer* v. *Hafer,* 33 Kan. 449, 6 P. 537; *Trumbly* v. *Martell,* 61 Kan. 703, 60 P. 741.'' The court then goes on to quote from the memorandum opinion filed by the trial court, in which it said in part: ''The homestead, under our public policy and law, is the one secure place where the strong hand of the law is stayed, and over which only by consent of both husband and wife can its power be exercised. The beneficent idea undoubtedly is to make and preserve for every family a shelter of a home, to be free, as long as husband or wife or a minor child shall live and occupy it, from the common vicissitudes of life. . . . To hold that either husband or wife can, at will, by leaving the common homestead, destroy its legal character as a homestead, would lead to such disastrous results that it could not for a moment be tolerated. Thus at the will of either the homestead could be subjected to judgment lien and sale and the right of shelter denied to the other spouse and even the little children.'' To this the reviewing court added: ''The wife is not left without a remedy applicable to such cases. She can terminate the homestead right by an absolute divorce (*Kern* v. *Field,* 68 Minn. 317, 71 N.W. 393, 64 Am.St.Rep. 482); or, without a divorce, by an application under section 5535, whenever she would be entitled to a divorce.''

In view of the foregoing it is our conclusion that the trial court herein properly held that the homestead could not be destroyed by the husband through the medium of an action for the partition of the property.

In 1929 said section 1238 was amended by adding the following sentence thereto: ''Property, within the meaning of this section, includes any freehold title, interest or estate which vests in the claimant the immediate right of possession, even though such right of possession is not exclusive''; and in a very recent case (*Estate of Kachigian,* 20 Cal.2d 787 [128 P.2d 865]) it was held that since the adoption of the said amendment a wife may declare a valid homestead on property held by her husband and a third person as tenants in common; and by way of argument supporting its decision on that point the court went on to say: ''It cannot be said that the rights of the other cotenant are in any way preju-

diced, as the homestead claimant, or his surviving family, acquires only such rights of occupancy as he had before the creation of the homestead, and the other cotenant's interest is in no way affected; for example, his right to use the property remains exactly as before and he may sell or assign his undivided share. If he objects to his cotenant, his remedy is by partition. (Code Civ. Proc., sec. 752, et seq; 20 Cal.Jur. 586, et seq.; see, also, other remedies between cotenants enumerated in 7 Cal.Jur. 363, et seq.)'' But for obvious reasons the observations thus made can have no application to a case such as this where complete title to the homesteaded property is held by the husband and the wife.

We have found nothing in the cases cited by appellant from outside jurisdictions which may be said to be here controlling. Some of them involved homesteaded property held by one of the spouses and a third person; others are based on statutory provisions unlike ours; and the remaining ones involved factual situations different from those here presented.

█ Nor is the situation here altered by the fact that in her declaration of homestead the wife stated that she estimated the value of the premises to be $50,000. In this connection it may be stated that appellant admitted that his net financial worth exceeded $300,000, and at the time of trial he valued the premises in question at only $15,000 or $20,000. However, the matter of the value of the homesteaded premises presents a false issue, for as said in *Lubbock* v. *McMann*, 82 Cal. 226 [22 P. 1145, 16 Am.St.Rep. 108], ''The whole lot being adapted to use as a homestead, and actually used as such at the time of dedication, it then became as an entirety affected with the homestead character. And this is so, without regard to the value of the lot, either at the time of its dedication or at any subsequent period. There is no statutory limit as to the value of the property which may be selected and upon which the character may be impressed. When the attributes of residence and selection according to law exist so as to express its essence, the homestead becomes an *estate in the premises* selected, exempted by law from forced sale. They may be of greater or less value than the interest in them exempted by law.'' (See also *Ham* v. *Santa Rosa Bank*, 62 Cal. 125, 139 [45 Am.Rep. 654].

■ It is true that section 1260 of the Civil Code provides that "Homesteads may be selected and claimed: 1. Of not exceeding five thousand dollars in value by any head of a family; 2. Of not exceeding one thousand dollars in value by any other person." But that section was enacted for the benefit of that class of judgment creditors embraced within section 1245 of said code, who are given the right under the preceding code sections to institute the proceedings prescribed therein for the ascertainment of the value of homesteaded premises, and upon the sale thereof to have the proceeds of the sale over the amount of the exemption fixed by said section 1260 applied to the satisfaction of the execution. As already pointed out, the proceeding provided for in those code sections is not available to appellant because admittedly he is not a judgment creditor in any sense of the term.

■ In further support of the judgment it is urged that appellant in instituting the partition suit against his wife did so for malicious and spiteful reasons, and to oust her from the home so that he might obtain possession thereof for himself, and that therefore, since a suit in partition calls for the application of equitable principles (*Akley* v. *Bassett*, 189 Cal. 625 [209 P. 576]), the trial court was justified in dismissing the suit. There was some evidence introduced to that effect, but as the trial court held, and correctly so in our opinion, the appellant's motives in bringing the action were quite immaterial to a determination of the major issue involved.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 29, 1943. Edmonds, J., and Schauer, J., voted for a hearing.