[No. A033532. First Dist., Div. Four. Oct. 27, 1986.]

JULIA A. NICOLOS, Plaintiff and Appellant, v.
WILLIAM B. GROVER, Defendant and Respondent.

**COUNSEL**

Gottschalk & Sanders and Neal I. Sanders for Plaintiff and Appellant.

Mathews & Mathews and Francis B. Mathews for Defendant and Respondent.

## Opinion

**SABRAW, J.**—Plaintiff brought this action to determine her rights in a house in Eureka as against the trustee in bankruptcy of plaintiff's ex-husband. The trial court declared that a judgment lien held by the trustee had priority over part of a homestead claim by plaintiff. We affirm.

### Facts

The matter was submitted to the trial court on the basis of the arguments of counsel and uncertified copies of papers from the bankruptcy proceedings described below. These papers included a stipulation filed in the bankruptcy court concerning many of the governing facts. Neither party offered strictly competent evidence or insisted that the other party do so. Moreover, it is evident that no factual dispute exists; respondent concedes the essential accuracy of appellant's statement of facts on appeal. The following summary therefore rests to some extent on assertions in the parties' briefs and papers below.

In January of 1979 Julia Nicolos (plaintiff) and Thomas Nicolos (husband) were divorced. At that time husband conveyed to plaintiff his interest in the house, which the two of them had owned as community property.

In April 1979 husband filed a petition in bankruptcy. Respondent William Grover, the trustee, commenced a proceeding in the bankruptcy court to recover husband's interest in the house. The court determined that the husband's conveyance to plaintiff was fraudulent and rendered judgment for the trustee for $11,500, representing one-half of the equity in the house. This finding and judgment appear to have become final, and no issue is raised here concerning their validity or conclusiveness on the underlying issue of liability.[1]

The bankruptcy court's judgment was entered in April 1980. No abstract of judgment was recorded until July 1980. Meanwhile, in June, plaintiff filed a homestead declaration. Further bankruptcy court proceedings to determine the effect of these events were inconclusive.[2]

---

[1] Plaintiff questions the bankruptcy court's power to declare that the trustee had a lien which attached immediately without recordation. This issue goes solely to determining which of the claims involved here was prior in time. Under the analysis adopted below that question is not material to the appeal.

[2] The bankruptcy court first held that the trustee's interest under the 1980 judgment was subordinate to plaintiff's claim of homestead. The court later annulled that order as beyond its jurisdiction, stating that the parties were "relegated to their procedures before the Humboldt County Superior court."

In May 1981 plaintiff filed this action seeking a declaration that she owned the house free of any claim by the trustee. The superior court concluded that the conveyance of husband's interest to wife was void as to his creditors and that her declaration of homestead was therefore ineffectual as against the trustee.

## ANALYSIS

■    The general rule is that, as against a grantor's creditors, a fraudulent conveyance is void (*Strangman v. Duke* (1956) 140 Cal.App.2d 185, 191 [295 P.2d 12]) and leaves title in the grantor as though no conveyance had been attempted (*Malaquias v. Novo* (1943) 59 Cal.App.2d 225, 231 [138 P.2d 729]; *Ohio Electric Car Co. v. Duffet* (1920) 48 Cal.App. 674, 678 [192 P. 298]; see Civ. Code, §§ 3439.09, 3439.10). This rule is the basis for the trial court's conclusion that husband's interest in the house was never conveyed to plaintiff and was unaffected by her homestead claim.

We believe the general rule governs here. Numerous cases recognize that homestead claims may be forced to give way to claims predicated on fraud. ■    "When the proceeds from property fraudulently obtained find their way into a homestead for the purposes of seclusion, the right of a creditor thus defrauded may become paramount to that of the owner of the homestead, dependent on the facts of the case." (*Parker v. Riddell* (1940) 41 Cal.App.2d 908, 914 [108 P.2d 88].) Thus a homestead may be "successfully attacked by a creditor where money fraudulently obtained from him is invested in and constitutes part of the homestead." (*Duhart v. O'Rourke* (1950) 99 Cal.App.2d 277, 280 [221 P.2d 767].) The closest case on its facts is *Ohio Electric Car Co. v. Duffet, supra,* 48 Cal.App. 674, which held that a debtor's wife could not avoid enforcement of a judgment against fraudulently conveyed property by relying on a later-filed homestead declaration. The conveyance was "void *ab initio,*" and the wife could not "make a void title good by filing a declaration of homestead covering the property." (*Id.* at p. 679.)

■    Plaintiff contends that the rule making fraudulent conveyances void "does not apply where there has been a valid homestead filed." This is based upon broad statements in several cases that the rules governing fraudulent conveyances are inapplicable to homesteads. (See *Yager v. Yager* (1936) 7 Cal.2d 213, 217 [60 P.2d 422, 106 A.L.R. 664] [doctrine "has no application to the creation of a homestead"]; *Engelman v. Gordon* (1978) 82 Cal.App.3d 174, 180 [146 Cal.Rptr. 835] [same]; *Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 327 [306 P.2d 944] ["homesteads are not subject to the law of fraudulent conveyances"]; *Duhart v. O'Rourke, supra,* 99 Cal.App.2d at p. 280 [same].) However, these statements must be under-

stood as referring to a fraudulent conveyance of property already validly homesteaded. In context they refer to the rule that a homestead may be validly created or conveyed notwithstanding a desire to hinder or delay creditors. (See *Oppenheim* v. *Goodley, supra,* 148 Cal.App.2d at p. 327; *Parker* v. *Riddell, supra,* 41 Cal.App.2d at p. 914.) Thus a homestead claim *by or on behalf of the grantor* is effective notwithstanding an attempt by him to fraudulently convey the homesteaded property to another. (See *Oppenheim* v. *Goodley, supra.*) This flows from the very fact that the fraudulent conveyance effects no transfer and leaves the property in the grantor. (*Id.* 148 Cal.App.2d at p. 327, quoting *Palen* v. *Palen* (1938) 28 Cal.App.2d 602, 606 [83 P.2d 36].) That same fact precludes a rule permitting the grantee, who acquires no interest, to homestead the property.[3]

The parties devote considerable attention to questions concerning the relative priority in time of their respective claimed interests. Since in our view plaintiff's homestead declaration did not affect the interest attempted to be conveyed by husband, it is unnecessary to address those issues.

The judgment is affirmed. Costs to respondent.

Anderson, P. J., and Poché, J., concurred.

---

[3]A different result might follow if *husband* had declared a homestead (see *Oppenheim* v. *Goodley, supra,* 148 Cal.App.2d at p. 329), or if a homestead had been declared while plaintiff and husband were still married (see *Wiltrakis* v. *Wiltrakis* (1966) 244 Cal.App.2d 257, 258-259 [53 Cal.Rptr. 97]). However, the record before us does not establish anything other than a fraudulent conveyance unaffected by any prior claim of homestead.