Filed 2/26/16  Martin v. Taylor CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RUDY MARTIN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CARL TAYLOR,<br><br>    Defendant and Respondent;<br><br>P. JOHN MANCUSO,<br><br>    Third Party Claimant and Respondent. | H041385<br>(Santa Clara County<br>Super. Ct. No. CV079571) |

In 2005, appellant Rudy Martin sued his former tenant, Carl Taylor, for unpaid rent.  Four years later, Martin was awarded a judgment that included $374,913 in attorney fees.  Taylor appealed the judgment, which this court affirmed in *Martin v. Taylor* (Feb. 8, 2011, H034649 [nonpub. opn.]).  In 2013, Martin sought to enforce the judgment, so he obtained a writ of execution and levied upon a piece of real property owned by Taylor.  What Martin did not know was that in 2006, Taylor had given the attorney who had represented him in the landlord-tenant litigation, respondent P. John Mancuso, a promissory note that was secured by a deed of trust on Taylor's property.  Therefore, when Martin levied upon the real property, Mancuso filed a third-party claim of possessory interest.  After conducting a hearing on the matter, the trial court granted Mancuso's third party claim.  The property was then sold at a trustee's sale, with Mancuso being the highest bidder.  Martin filed a motion for reconsideration, which the

court denied. Martin has appealed both the order granting Mancuso's third party claim and the order denying his motion for reconsideration.

Martin argues that the court erred, because it erroneously concluded that his argument that the promissory note and deed of trust had been fraudulently conveyed by Taylor to Mancuso was barred under the applicable statute of limitations (Civ. Code, § 3439.04), there was insufficient evidence that Taylor had a possessory interest in the property, and that due process was not given because Mancuso introduced a statute of limitations argument only two days before the evidentiary hearing. We agree with Martin's claim that the trial court erred in finding that his fraud claim was barred by the statute of limitations. However, the subsequent sale of the property has mooted Martin's arguments pertaining to Mancuso's third party claim. Therefore, we reverse the order granting Mancuso's third party claim with directions for the trial court to dismiss the third party claim as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

The landlord-tenant dispute between Martin and Taylor began in 2005, when Martin sued Taylor for unpaid rent. The litigation quickly escalated. After three years, the parties entered into an agreement that Taylor would be subject to damages of no more than $25,000 but no less than $20,000. According to the lease agreement between Martin and Taylor, Taylor was liable for reasonable attorney fees associated with a lawsuit to recover unpaid rent. Martin subsequently filed a motion requesting attorney fees of $187,456.50 multiplied by two because of the extra time he spent on the case due to Taylor's litigation tactics.

Taylor opposed the request for fees. The trial court found that the primary basis for recovery of attorney fees was the clause in the signed lease agreement between Martin and Taylor. Therefore, the court awarded the requested fees and found sufficient justification for use of the multiplier. On August 10, 2009, the trial court entered

2

judgment in favor of Martin and awarded him approximately $23,000 in damages and $374,913 in attorney fees.

Taylor appealed the judgment, arguing that the clause in the lease regarding attorney fees was unenforceable. On February 8, 2011, this court rejected Taylor's claims and affirmed the judgment. (*Martin v. Taylor* (Feb. 8, 2011, H034649) [nonpub. opn.].)

In July 2013, Martin sought to enforce the judgment. He secured a writ of execution and had the sheriff serve a notice of levy upon two pieces of property owned by Taylor in order to satisfy the amount owed on the judgment.

On March 17, 2014, Mancuso, the attorney who had represented Taylor in the landlord-tenant dispute, filed a third party claim of either a security interest or lien on one of the properties subject to the levy pursuant to Code of Civil Procedure section 720.210.[1] In 2006, while the landlord-tenant dispute was still ongoing, Taylor had executed the promissory note payable to Mancuso in the amount of $135,870, which was secured by the deed of trust on one of the levied properties. Taylor had executed the promissory note in exchange for Mancuso's legal services. In 2009, Mancuso had recorded a short form deed of trust securing the promissory note. Mancuso claimed that the security interest was based on this deed of trust.

Two days later, on March 19, 2014, Mancuso filed another third party claim of either ownership or possession under section 720.110. Mancuso claimed a possessory interest based on an undated document signed by Taylor. The document stated: "I Carl Taylor give P. John Mancuso full right to occupy and possess the land that I own and known as parcel 756-02-034. He may lease or rent it as he chooses and keep all the money paid for rent or lease payments." Again, Mancuso also alleged he had a security

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

interest in the property based on the deed of trust securing the promissory note. Mancuso demanded either release of the property from the levy or payment of the amount due on the promissory note.

After receiving the notices of Mancuso's third party claim, Martin requested a temporary restraining order halting the levying process and enjoining the sheriff from releasing the levy until an evidentiary hearing on the validity of Mancuso's claim was held, which the trial court granted. Martin also requested that the court issue an order declaring that Mancuso had fraudulently obtained the deed of trust on Taylor's property.

The evidentiary hearing on the third-party claim was held on May 21, 2014. During the hearing, Taylor and Mancuso both testified. Mancuso asserted that he obtained the promissory note in exchange for providing legal services to Taylor.

Following the hearing, the court issued a written order granting Mancuso's third party claim. The court found that the evidence established a prima facie showing that Mancuso had a secured interest in Taylor's real property based on the deed of trust.

The court also found that Martin's claim that the deed of trust and promissory note were conveyed fraudulently was barred by the statute of limitations, since Civil Code section 3439.09, subdivisions (a) and (b) require that an action invaliding a fraudulent transfer be commenced either within four years of the transfer or when the obligation occurred. In coming to this conclusion, the trial court held that Taylor's appeal in *Martin v. Taylor* (Feb. 8, 2011, H034649 [nonpub. opn.]) did not automatically stay enforcement of the judgment. Therefore, the statute of limitations started to run in 2009, when the judgment in the landlord-tenant litigation was entered by the trial court. Accordingly, when Martin brought his fraud claim in 2014, more than four years had elapsed. The court also held that Martin had failed to sustain his burden to demonstrate fraud, since he did not show that the promissory note was not supported by a real obligation.

4

The trial court ordered the parties to conduct an appraisal of the property before Martin could bring another motion to sell. The court's order did not dispose of the property in any way. Nor did it declare that the property was validly owned by Mancuso. Presumably, the temporary restraining order halting the release of the levy had since expired, because the restraining order was in effect only up until the hearing on the third party claim.

On June 6, 2014, Martin filed a motion for reconsideration. In part, he argued that the trial court should vacate its prior order, because Mancuso had introduced a statute of limitations argument a mere two days before the hearing on the third party claim. Martin acknowledged that after the hearing on the third party claim, the subject property had since been transferred and sold via a trustee's sale. Mancuso was the highest bidder at the trustee's sale and had submitted a credit bid of the amount due on the promissory note. A trustee's deed was recorded on June 12, 2014. After considering Martin's written and oral arguments, the court denied his motion to reconsider.

Martin appealed both the order granting Mancuso's third party claim and the order denying the motion for reconsideration.[2]

DISCUSSION

1. *Motion to Augment and Request for Judicial Notice*

   a. **Mancuso's Motion to Augment or Request for Judicial Notice**

   Before we address the merits of Martin's substantive claims on appeal, we first address Mancuso's motion to augment the record. As Martin argues in his reply brief, the trial court relied on multiple exhibits during the evidentiary hearing on the validity of the third party claim. However, when Martin requested that the records be transmitted to

---

[2] Martin obtained a judgment against Taylor when he prevailed in the landlord-tenant litigation. That judgment is separate from this third party claim proceeding, which is an appealable order under section 720.390.

5

this court on appeal, the superior court clerk certified that she could not locate the original exhibits. Nonetheless, the majority of these exhibits are included as part of the record in Martin's appellant's appendix. To supplement the record, Mancuso has moved to augment the record to include the three exhibits that were admitted into evidence by the trial court that were not included in the appellant's appendix. In the alternative, he requests that this court take judicial notice of the attached exhibits. We grant Mancuso's motion to augment the record. (Cal. Rules of Court, rule 8.155(a).)

Since we grant Mancuso's request to augment the record, we find that Martin's argument that the trial court's order should be reversed because the superior court clerk has lost some of the exhibits submitted during the hearing to be moot. All of the exhibits that were accepted into evidence by the trial court are now before us on appeal.[3]

b. **Martin's Request for Judicial Notice**

Next, we address Martin's request for judicial notice of the transcripts of the oral examinations of Mancuso and Taylor. Mancuso objects to Martin's request, arguing that the trial court only reviewed the transcripts so that it could rule on objections to some of the questions asked during the examinations. Therefore, Mancuso claims that the oral examination transcripts are not relevant to the issues raised on appeal.

We disagree. During the hearing, the court asserted that it had reviewed the documents that had been lodged with the court. Since the oral examinations were among those documents, we must presume that it is possible that the court relied on the contents of the examination when making its rulings. Accordingly, we grant judicial notice of the oral examinations. (Evid. Code, § 459.)

---

[3] Additionally, "[w]here exhibits are missing we will not presume they would undermine the judgment." (*Western Aggregates*, *Inc*. *v*. *County of Yuba* (2002) 101 Cal.App.4th 278, 291.) And, the judgment is conclusively presumed correct as to evidentiary matters. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) In sum, loss of trial exhibits does not necessarily mean that a judgment must be reversed on appeal.

6

2. *The Trial Court's Rulings*[4]

a. **Mootness**

We now address whether Martin's attacks on the merits of the trial court's order have been mooted by the subsequent sale of the real property at issue. The record reflects that after the hearing on the third party claim, the property was sold to Mancuso at a trustee's sale.

" 'California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies "[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . ." ' " (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 174.) " 'The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become "overripe" and is therefore moot.' [Citation.] By the same token, an appeal is moot if ' "the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." ' " (*Id.* at pp. 174-175.)

Martin attacks the court's order in two ways. He argues the court erroneously concluded that the statute of limitations barred his claim that the promissory note and deed of trust were conveyed fraudulently. He also argues that the trial court erred when it

---

[4] Martin has appealed from both the order confirming the validity of Mancuso's third party claim and the order denying the motion for reconsideration. It is well-settled that a motion for reconsideration is not separately appealable. (§ 1008.) Section 1008, however, provides that if the order that was subject to the motion is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order. Here, Martin's appeal from the motion for reconsideration was improper, but he also appealed from the order determining the validity of Mancuso's third party claim, which is an appealable order. (§§ 720.390, 720.420.) Therefore, we may review Martin's arguments pertaining to the motion for reconsideration as part of an appeal from the order determining the validity of Mancuso's third party claim.

7

found that Mancuso had a valid third party claim. In a supplemental letter brief, Martin insists that the appeal is not moot, because a determination that Mancuso fraudulently obtained the promissory note and deed of trust may have implications in a related probate case involving the estate of Taylor's deceased wife.[5] Martin also asserts that a decision in this case could effectively undo the transfer of property and allow his fraud claims to go forward in the probate action, unhampered by the trial court's erroneous conclusion regarding the statute of limitations.

Mancuso, however, argues that the appeal is moot, because the subject property was lawfully sold at the trustee's sale following the order granting the validity of his third party claim. Further, Mancuso points out that Martin did not post a bond to stay the orders pending appeal, nor did he seek a writ of supersedeas from this court. Accordingly, Mancuso argues that Martin cannot be awarded with effective relief.

We find that both parties are partially correct. As a general proposition, a bona fide purchaser for value at a foreclosure sale cannot be " 'chargeable with the fraud of his predecessors and takes a title purged of any anterior fraud affecting it and free from any equities existing between the original parties.' " (*Melendrez v. D & I Investment*, *Inc.* (2005) 127 Cal.App.4th 1238, 1256-1257; *Weingand v. Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 819 [finding that foreclosure and sale to a bona fide purchaser for

---

[5] The probate case, however, is not before us in this appeal. Although the case is related since it apparently concerns the same parties and the same piece of real property, it was not consolidated with the third party claim below by the trial court. Accordingly, based on the record before us it is unclear how the third party claim bears on the probate case.

Further, we note that Martin has included documents pertaining to the related probate case in his appellant's appendix. Below, Martin requested judicial notice of some parts of the probate case's file, but based on the record it is unclear whether the court granted these requests or not. We do not rely on these documents in our discussion.

value would moot appellant's challenges to validity of the trust deed].) Mancuso, however, is not a bona fide purchaser for value.

Martin alleged below that the promissory note and deed of trust were fraudulently conveyed. "The general rule is that, as against a grantor's creditors, a fraudulent conveyance is void [citation] and leaves title in the grantor as though no conveyance had been attempted [citations]." (*Nicolos v. Grover* (1986) 186 Cal.App.3d 858, 861.) Therefore, if Martin had prevailed on his claim that Taylor's conveyance of the promissory note and deed of trust was fraudulent, the title would have been left to Taylor as if the promissory note and deed of trust had never been conveyed. Additionally, under Civil Code section 3439.07 a creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" (*id.*, subd. (a)(1)) and "[a]ny other relief the circumstances may require" (*id.*, subd. (a)(3)(C)).

Therefore, Martin's fraud claim may not be completely moot.[6] As the respondent, Mancuso bears the burden of persuading us that the appeal is moot, and he does not meet his burden here. (See *Smith v. State Savings & Loan Assn.* (1985) 175 Cal.App.3d 1092,

---

[6] Martin also points out that he filed a notice of pendency of litigation in the related probate case. Civil Code section 1214 provides that a transfer of property recorded after the recording of a notice of pendency is subject to the outcome of the noticed litigation. (*Moore v. Schneider* (1925) 196 Cal. 380, 390.) This notice was recorded before the foreclosure on the deed of trust and the subsequent transfer of the property. Although the lis pendens gave Mancuso constructive notice of the probate action, it did not give constructive notice of the third party claim proceeding. Constructive notice, however, is not necessary. Mancuso was a party to the third party claim proceeding and participated in the hearing. He had actual notice of the litigation. "Absent the filing of a lis pendens, '[a]nyone with actual notice of the pendency of the [action] who acquires an interest in the property takes subject to any judgment that may be rendered therein . . . . The sole purpose of recording a notice of *lis pendens* is to secure the same result by giving constructive notice of the pendency of the proceeding.' " (*Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523, fn. 2.)

1100; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 ["a party who seeks a court's action in his favor bears the burden of persuasion"].)

However, the same cannot be said about Martin's arguments regarding Mancuso's third party claim of possessory interest. If we reject Martin's fraud claim, we will not be able to grant Martin effective relief. A reversal of only the portion of the trial court's order granting the third party claim will not restore the parties to the status quo and will not undo the transfer of the property.

The effect of filing a third party claim is that the property at issue is released from the levy unless the judgment creditor files an undertaking or obtains a restraining order. (§ 720.170.) Filing a third party claim halts the execution of the writ, so the levying officer may not sell the property.[7] (§ 720.150.) At the conclusion of the hearing on a third party claim, the court "may order the disposition of the property or its proceeds in accordance with the respective interests of the parties." (§ 720.390.) If the property has been released from levy, it may be levied upon again after a hearing on the third party claim establishes that "the debtor has an interest in the property that may be levied upon or otherwise applied to the satisfaction of the judgment." (§ 720.430.)

In this case, after the hearing on the third party claim, the court did not dispose of the property in any way. The court did not declare that the property was in fact fully owned or possessed by Mancuso. It also did not order the disposition of the proceeds from the sale of the property, because the property had not yet been sold. After granting Mancuso's third party claim, the court ordered the parties to participate in an assessment

---

[7] However, if the judgment creditor files an undertaking the levying officer must execute the writ unless the third party claimant also files an undertaking. (§ 720.160, subd. (a).) If the third party files a sufficient counter-undertaking, the subject property may be released. (§ 720.610.) Here, it does not appear that either Martin or Mancuso filed an undertaking.

of the property in order to determine whether the property value could cover the total amount of debt owed by Taylor before Martin could bring another motion to sell.[8]

Since the third party claim hearing had been held, the property was released from the levy since the temporary restraining order, which had previously halted the release of the levy pending the hearing, had expired. The expiration of the temporary restraining order likely allowed the trustee's sale to go forward.

In this situation, if we were to only reverse the trial court's grant of Mancuso's third party claim, our reversal would essentially allow Martin to levy upon the subject property again. It will not, however, undo the sale of the property by the trustee's sale, which proceeded by an entirely separate process that is not related to the third party claim. As a result, absent a finding that the promissory note and deed of trust were conveyed fraudulently, Martin would not be able to obtain any effective relief. It is well-settled that an execution lien can only reach the judgment debtor's interest in the property. (*First Nat. Bank v. Kinslow* (1937) 8 Cal.2d 339, 345.) And, based on the record before us, Taylor no longer owns an interest in the subject property. Finding that Mancuso's third party claim was erroneously granted will not vest Taylor with an interest in the property. If Taylor does not possess an interest in the property, Martin would not be able to levy upon it again.

Accordingly, Martin's arguments regarding Mancuso's third party claim are moot, unless we find that his fraud claim has merit.

b. **The Statute of Limitations Does Not Bar Martin's Claim**

Martin argues that the deed of trust securing the promissory note resulted from fraud. The trial court concluded that the statute of limitations found in the Uniform

---

[8] Based on the court's order, it appears that the court may have treated the third party claim process as akin to an action for declaratory relief to determine the priority of liens on Taylor's property.

11

Voidable Transactions Act (UVTA), embodied in Civil Code section 3439 et seq., barred Martin's claim.[9]

First, we must reject Martin's claim that his due process rights were violated when the trial court considered Mancuso's statute of limitations argument. Martin argues that Mancuso submitted his memorandum on the statute of limitations a mere two days before the hearing, which was therefore considered late under section 1005.

Martin, however, did not object to the court's consideration of the late-filed memorandum during the hearing on the third party claim. He also did not request a continuance or additional time to brief an opposition to Mancuso's papers. Furthermore, during the hearing, Martin argued the statute of limitations issue to the court. He asserted that the statute of limitations should not bar his claim of fraud and provided the court with citations to authority regarding the appropriate statute of limitations.

During the hearing on the motion for reconsideration the court acknowledged that accepting Mancuso's late-filed memorandum may have prejudiced Martin. The court then reheard and reconsidered all of Martin's arguments to give "full consideration" to Martin's claims. Therefore, Martin was given a "full and fair opportunity to present all competent and material evidence relevant to the matter to be adjudicated." (*Lammers v. Superior Court* (2000) 83 Cal.App.4th 1309, 1319.) "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333.) As a result, we see no merit in Martin's due process claims.

However, Martin's claim that the trial court erred in its substantive ruling that the statute of limitations barred his claim has merit. Civil Code section 3439.09, subdivisions (a) and (b) provide that an action under the UVTA is extinguished unless it

_____

[9] The former Uniform Fraudulent Transfer Act was renamed the Uniform Voidable Transactions Act in 2015. (Stats. 2015, ch. 44, § 2).

is brought "not later than four years after the transfer was made or the obligation was incurred." However, "[i]n cases . . . where there is an alleged fraudulent transfer made during a pending lawsuit that will establish whether in fact, and the extent to which, a debtor-creditor relationship exists, . . . the limitation period does not commence to run until the judgment in the underlying action becomes final." (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 937 (*Cortez*).)

In *Cortez*, the plaintiff filed a wrongful termination suit against a company that was owned by the Vogt family. (*Cortez, supra*, 52 Cal.App.4th at p. 920.) The company's assets were sold sometime around August 1987 to another corporation, McDonnell Douglas. (*Id.* at p. 921.) In 1989, Cortez was awarded $93,000 following a jury trial against the company. (*Id.* at p. 922.) In 1990, the appellate court dismissed the appeal from the judgment. (*Id.* at p. 923.) Following dismissal of the appeal, "the judgment against [the company] became final." (*Ibid.*) In 1993, the plaintiff filed a cause of action to set aside the allegedly fraudulent transfer to McDonnell Douglas. (*Id.* at p. 924.) Although the allegedly fraudulent transfer occurred in 1987, the appellate court held that the four year statute of limitations under Civil Code section 3439.09 did not begin to run until 1990, when the underlying judgment became final after dismissal of the appeal. (*Cortez, supra*, at p. 937.) Therefore, Cortez's claim of fraud was timely brought in 1993.

We find *Cortez* analogous to the present case. The promissory note was conveyed in 2006, during the pendency of the landlord-tenant dispute between Martin and Taylor, which began in 2005. Although the underlying judgment in the landlord-tenant litigation was entered in Martin's favor in 2009, Taylor appealed the judgment in *Martin v. Taylor* (Feb. 8, 2011, H034649 [nonpub. opn.]). The judgment was affirmed in 2011. (*Ibid.*)

Applying the rationale employed in *Cortez*, the statute of limitations did not begin to run until after the judgment in the landlord-tenant litigation became *final*. "An action

13

is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." (§ 1049.) Accordingly, the judgment in the landlord-tenant litigation did not become final until 2011, when the appeal was decided. Martin's claim of fraud was brought in 2014, well within the four-year statute of limitations provided in Civil Code section 3439.09. Martin's fraud claim was not barred by the statute of limitations.

Martin and Mancuso, however, contend that the relevant issue is whether the *enforcement* of the judgment was stayed pending the appeal from the judgment in the landlord-tenant litigation. We disagree. Whether a judgment is final and whether enforcement of a judgment is stayed are wholly different concepts. "[A]ppeals do not automatically stay enforcement of the order [appealed from]. But they do suspend the force of the order as a conclusive determination of the rights of the parties. [Citation.] This is so, since finality is not accorded a judgment until affirmance in the event of the appeal." (*Caminetti v. Guaranty Union Life Ins. Co.* (1943) 22 Cal.2d 759, 766; *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 294-295.) Relevant here, the appellate court in *Cortez* concluded that the statute of limitations began running in 1990, *after* the appeal was dismissed. (*Cortez*, *supra*, 52 Cal.App.4th at pp. 923, 937.)

Accordingly, we find that the trial court erred when it concluded that Martin's fraud claim was barred by the statute of limitations.

c. **Martin's Fraud Claim Fails for Lack of Sufficient Evidence**

As an independent ground for finding against Martin, the court also concluded that that he failed to sufficiently demonstrate that the conveyance of the promissory note and the deed of trust was fraudulent. Therefore, Mancuso argues that even if Martin's claim was not barred by the applicable statute of limitations, his fraud argument would fail for lack of sufficient evidence. We agree.

14

We review a court's factual findings for substantial evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.) Here, the court found that "[Martin] failed to sustain his burden that the promissory note is not supported by a real obligation. The promissory note itself is prima facie evidence of the obligation and Plaintiff [Martin] did not prove that the note was not related to a debt for payment of attorneys fees."

Under Civil Code section 3439.04, "(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: [¶] (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. [¶] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

Therefore, a key element of a fraudulent conveyance claim is whether the transfer or obligation was incurred without fair consideration. And, the court concluded that Martin did not meet his burden to show that the promissory note executed by Taylor to Mancuso was not supported by a real obligation, since Mancuso confirmed that it was related to the payment of attorney fees for the legal services Mancuso had provided to Taylor. This finding was supported by substantial evidence based on the testimony of Taylor and Mancuso, which the court must have credited during the hearing on the third party claim.

Accordingly, we find no error with the court's conclusion that Martin failed to demonstrate the existence of fraud. And, based on this conclusion, we also find Martin's arguments regarding Mancuso's third party claim to be moot for the reasons we

15

previously discussed. Even if we were to address the merits of his arguments pertaining to the third party claim, reversal would afford him with no effective relief.

3. *Conclusion*

We find that the court's determination that Martin's fraud claim was barred by the statute of limitations was erroneous. Martin, however, failed to sustain his evidentiary burden that the promissory note and deed of trust were procured by fraud. Therefore, his arguments pertaining to the validity of Mancuso's third party claim of possessory or ownership interest are moot. " ' "Where an appeal is disposed of upon the ground of mootness and without reaching the merits, in order to avoid ambiguity, the preferable procedure is to reverse the judgment with directions to the trial court to dismiss the action for having become moot prior to its final determination on appeal." ' " (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 229.) Disposing of the case this way would avoid affirming the judgment by implication. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 944-945.) Although we reached the merits of Martin's fraud claims, we do not reach the merits of whether the trial court erred when it granted Mancuso's third party claim of ownership or possession. Accordingly, we reverse the trial court's order with directions to dismiss the underlying third party claim as moot. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134-135.)

**DISPOSITION**

The order granting the third party claim is reversed and the matter is remanded to the trial court with directions to dismiss the third party claim as moot. Each party shall bear his own costs on appeal.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Márquez, J.